UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                            CASE NO. 8:21-cr-13-TPB-AEP

DAVID ALAN QUARLES,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This MATTER is before the Court on the United States' Motion for Restitution ("Motion") (Doc. 147).[1] The Defendant did not file a written response but presented argument in response to the Motion during a February 23, 2023 hearing (Doc. 152). By the Motion, the United States requests that the Court order mandatory restitution under 18 U.S.C. §§ 1593, 2429, and 3663A, and discretionary restitution under 18 U.S.C. § 3663, for a total restitution amount of $1,658,181.65

---

[1] The matter of restitution was initially referred to the undersigned for a Report and Recommendation (Doc. 138). However, during a status hearing on February 7, 2023, the Court inquired about whether the parties considered consenting as to the undersigned on the matter of restitution (Doc. 143). The Defendant subsequently filed a written Consent to Conduct Restitution Proceeding Before Magistrate Judge (Doc. 151). The consent was not accepted by the District Court. Further, during an April 11, 2023 status hearing, the undersigned informed the parties that a Report and Recommendation would be issued on the matter given the uncertainty of the undersigned's authority to enter an order on the matter. (Doc. 159).

Upon due consideration, the undersigned recommends for the following reasons that only mandatory restitution be ordered for Victim 1 in the amount of $598,010.40; Victim 3 in the amount of $217,737.12; and Victim 4 in the amount of $15,333.60, for a total restitution amount of $831,081.12.

## I. Background

On January 13, 2021, a federal grand jury returned a ten-count indictment charging the Defendant with one count of conspiracy, in violation of 18 U.S.C. § 371 (Count One), one count of importation of an alien for prostitution, in violation of 8 U.S.C. §§ 1328 and 2 (Count Three), three counts of sex trafficking by force, fraud, or coercion, in violation of 18 U.S.C. §§ 1591(a) and (b)(1) and 2 (Counts Two, Four, and Eight), two counts of transportation for prostitution, in violation of 18 U.S.C. §§ 2421 and 2 (Counts Five and Seven), and two counts of using a facility of interstate commerce to aid in prostitution racketeering, in violation of 18 U.S.C. §§ 1952(a)(3)(A) and 2 (Doc. 1) (Counts Six and Nine). Subsequently, on October 19, 2022, a federal grand jury returned a ten-count superseding indictment against the Defendant (Doc. 84). The only substantive changes to the original indictment were to the sex trafficking counts (Counts Two, Four, and Eight), which were amended to include language that the Defendant financially benefited from his participation in the sex trafficking and Count Ten was amended to attempted sex trafficking of a child, in violation of 18 U.S.C. § 1594 (Count Ten). The trial commenced on October 31, 2022 (Doc. 103) and on November 7, 2022, the jury returned a guilty verdict as to all counts (Doc. 115).

On January 24, 2023, the Honorable Thomas P. Barber sentenced the Defendant to 420 months' imprisonment followed by 10 years' supervised release (Doc. 137). However, during the sentencing hearing, the court bifurcated the issue of restitution and referred it to the undersigned for further consideration (Doc. 138). The Court conducted a hearing on the Motion on February 23, 2023, during which the parties stipulated to evidence of record (Doc. 152). Specifically, upon stipulation of the parties, trial exhibits: 1, 1A, 1B, 1C, 1D, 1E, 30D-2, 35A, 35B, 35C, 37J-2, 37M-3, 37M-4, 37M-5, 37M-6, 37M-7, 37N-2, 37N-3, 37N-4, 37O-2 were again admitted into the record for purposes of the restitution matter, and trial transcripts were admitted into the record as United States' Exhibits 40 and 41. Last, the Court conducted a hearing on April 11, 2023, during which the Court announced an intention to enter a report recommending an award of restitution, and stated on the record the Court's approximate calculation of restitution for each victim and that the Court still had made no determination whether to recommend an award of discretionary restitution (Doc. 159).

By the Motion, the United States asserts that the Defendant's criminal activities involved at least eight Victims, and that the Defendant targeted each of the eight Victims, seeking to exploit their vulnerabilities (Doc. 147, 7). The United States further asserts that the Defendant had no legitimate employment since 1996, but rather, for nearly 30 years, the Defendant had engaged in the sexual exploitation of young women for his own financial gain (Doc. 147, 7-8). The United States contends that the Defendant controlled his Victims by implementing a host of

"rules" and that he required them to give him all of the money they earned from their commercial sexual encounters (hereinafter "dates") (Doc. 147, 8).

Specifically, the United States asserts that although there is no way to precisely account for all the dates that the Victims engaged in for the Defendant's financial gain, the trial testimony, as well as exhibits admitted into evidence during the trial, provide a reasonable, conservative basis which mandates a total award of restitution in the amount of $1,658,181.65 (Sealed Doc. 148). As noted by the United States, there is no evidence of record to support a restitution award for Victims 6 and 8, as they did not testify at trial and there is no other evidence on record to support such an award (Sealed Doc. 148, fn. 1). Thus, the United States is only seeking restitution awards for six of the Victims, Victims 1, 2, 3, 4, 5, & 7. Notably, the United States detailed its precise calculations for each of the six Victims based upon an average wages per day for each victim in the amount of $1,054.19 (an average rate of $191.67 per date, multiplied by an average amount of 5.5 dates per day) (Sealed Doc. 148). Based upon an average work week of 5 days per week, the United States asserts an average wage per week for each victim of $5,270.95 (*Id.*). As detailed in the table below, to calculate the amount of restitution for each of the six victims, the United States multiplied the average wage per week of $5,270.95 by the number of weeks worked by each victim (195 weeks for Victim 1; 20 weeks for Victim 2; 71 weeks for Victim 3; 5 weeks for Victim 4; 17 weeks for Victim 5; and 19 weeks for Victim 7).

4

| Applicable Statutes | Victim | Amount |
|---|---|---|
| 18 U.S.C. §§ 1593, 3663A | Victim 1 – N.H. | $1,027,835.25 |
| 18 U.S.C. § 3663 | Victim 2 – J.P.R.F. | $40,000 |
| 18 U.S.C. §§ 1593, 2429, 3663A | Victim 3 – K.K. | $374,237.45 |
| 18 U.S.C. §§ 2429 | Victim 4 – H.C. | $26,354.75 |
| 18 U.S.C. § 3663 | Victim 5 – S.G. | $89,606.15 |
| 18 U.S.C. §§ 2429 | Victim 6 – A.W. | $0 |
| 18 U.S.C. § 3663 | Victim 7 – C.C. | $100,148.05 |
| 18 U.S.C. §§ 1593, 3663A | Victim 8 – A.C. | $0 |
| **Total Restitution Requested** | | **$1,658,181.65** |

(Doc. 147 at 9). Last, the United States properly asserts that pursuant to 18 U.S.C. §§ 1593; 2429; and 3363A, restitution is mandatory for Victims 1, 3, and 4, and that pursuant to 18 U.S.C. § 3363, restitution is discretionary as to Victims 2, 5, and 7 (Doc. 147, 9-12).

During the February 23, 2023 hearing, the Defendant did not dispute that Victims 1, 3, and 4 are entitled to mandatory restitution, nor did the Defendant dispute that the Court could consider awarding discretionary restitution to Victims 2, 5, and 7. Additionally, the Defendant did not object to the average rate of $191.67 per date and agreed that the evidence of record supported such a rate. However, the Defendant objected to whether the evidence of record supported the United States' calculations relating to the average amount of dates per day, and thus the average weekly rate. The Defendant specifically noted that the cell phone records, and other evidence are not consistent with the United States' calculations. However, the Defendant did not specifically cite or reference any evidence to contradict the United States' calculations. The Defendant further argued that given the

Defendant's ability to pay, the Court should not award discretionary restitution to Victims 2, 5, and 7. Last, the Defendant implied that the Court should consider offsetting any restitution award by monies spent on or given to the Victims.

## II. Applicable Law

### a. *Justice for Victims of Trafficking Act*

Pursuant to the Justice for Victims of Trafficking Act, codified at 18 U.S.C. § 1593, the Court must order restitution for the "full amount of the victim's losses" as determined by the Court. The "full amount of the victim's losses" has the same meaning as provided in section 2259(c)(2). As set forth under Section § 2259(c)(2), "full amount of the victim's losses" is defined and includes: "(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) reasonable attorneys' fees, as well as other costs incurred; and (F) any other relevant losses incurred by the victim" (*Id.*). Additionally, the "full amount of the victim's losses" shall "include *the greater of the gross income or value to the defendant of the victim's services or labor or the value of the victim's labor* as guaranteed under the minimum wage and overtime guarantees of the Fair Labor Standards Act." 18 U.S.C. § 1593(b)(3) (emphasis added).

Significantly, a defendant is not entitled to offset restitution by the amount the defendant expended on his victims' living expenses, as victims are entitled to the "gross income" derived from trafficking. *See United States v. Williams*, 5 F.4th 1295, 1306 (11th Cir. 2021) (stating that "the victim is entitled to the "gross income"

derived from her trafficking, the text is clear: she is entitled to the full amount, without any offset"). Furthermore, restitution under Section 1953 is required to be ordered without regard to the "economic circumstances of the defendant." 18 U.S.C. § 3664(f)(1)(A); *see also* 18 U.S.C. § 1593(b)(2).

### b. *Mann Act*

The Mann Act, codified at 18 U.S.C. §§ 2421 – 2429, requires the Court to order restitution for a violation of 18 U.S.C. § 2421, notwithstanding sections 3663 or 3663A. *See* 18 U.S.C. § 2429(a). Specifically, section 2429(b) requires:

> The order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses, as determined by the court under paragraph (3) and shall additionally require the defendant to pay *the greater of the gross income or value to the defendant of the victim's services*, if the services constitute commercial sex acts as defined under section 1591.

(*Id.*) (emphasis added). Additionally, as under Section 1593(b)(2), under the Mann Act, restitution is required to be ordered without regard to a defendant's ability pay. 18 U.S.C. § 3664(f)(1)(A); *see also* 18 U.S.C. § 2429(b)(2).

### c. *Discretionary Restitution under the Victim and Witness Protection Act*

Section 3663 provides for discretionary restitution to victims of crime under Title 18. The court is required to consider "(1) the amount of the loss sustained by each victim as a result of the offense; and (2) the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's

dependents, and such other factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i). Under Section 3663 "[r]estitution seeks to make victims whole by reimbursing them for their losses. Because restitution is not designed to punish the defendant, the amount owed must be based on the amount of loss *actually* caused by the defendant's conduct." *United States v. Sheffield*, 939 F.3d 1274, 1277 (11th Cir. 2019) (internal citations omitted).

### d. *Burden of Proof*

It is the government's burden to prove the amount of the victims' losses by a preponderance of the evidence. *See* 18 U.S.C. § 3664(e); *see also United States v. Futrell*, 209 F.3d 1286, 1290 (11th Cir. 2000). In calculating a victim's losses, district courts can rely on any evidence "bearing 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Baston*, 818 F.3d 651, 665 (11th Cir. 2016). Estimates can be relied upon to determine earnings for commercial sex acts, so long as "the basis for reasonable approximation is at hand." *Williams*, 5 F.4th at 1305 (citing *Futrell*, 209 F.3d at 1292). Significantly, the amount of restitution need not "be proven with exactitude." *United States v. Bixler*, No. 21-5194, 2022 WL 247740, at *11 (6th Cir. Jan. 27, 2022), *cert. denied*, 213 L. Ed. 2d 1066, 142 S. Ct. 2838 (2022).

### III. Discussion

Here, there is no dispute that Victims 1, 3, and 4 are entitled to mandatory restitution, and that Victims 2, 5, and 7 are due consideration for discretionary

restitution. Further, there is no dispute in that the record evidence supports an average rate of $191.67 per date. The only matters at issue to be resolved by the Court are: (1) the appropriate restitution calculations for each of the Victims, and (2) should Victims 2, 5, and 7 be awarded any restitution?

Given the record before the Court, which lacks any precise records or other corroborative evidence, the Court must reasonably approximate restitution for each of the Victims. To appropriately approximate such restitution, the United States proposes a method, as approved by the *Williams* court, which is to first calculate the average wages per day for each Victim by multiplying the average rate per date by the average amount of dates per day. Once the average wages per day is calculated, then an average weekly wage can be calculated by multiplying the average wages per day by the number of days worked per week. Last, the total approximate earnings can be finalized by multiplying the average wage per week by the number of weeks worked by each Victim.

As noted above, an average rate per date of $191.67 is undisputed. However, the United States' suggestion of 5.5 dates per day is contested. The United States asserts that the average of 5.5 dates per day is a reasonable approximation based upon the Victims' trial testimony, as well as the record evidence. Clearly, there is no precise way to determine the average amount of dates per day for each victim. However, there is evidence of record which can be utilized as a reliable source to estimate the average amount of dates per day. Specifically, the cell phone records in United States Exhibit 37J-2 are a reliable example of the Defendant's daily

activities directing various Victims to attend dates or as identified in the cell records tricks or "trks". Upon review of the text message communications in Exhibit 37J-2, the Court identified a total of 241 dates on 77 individual days for an approximate amount of 3.2 dates per day. Although not precise, the Court is satisfied that the 3.2 dates per day is an appropriate reasonable approximation.[2] Additionally, upon review of the trial testimony (Exhibits 40 and 41) and for the reasons as cited by the United States in the Motion (Doc. 147), the Court is satisfied that the amount of average days worked per week by each Victim was 5 days, and that the total weeks worked by each of the Victims was as follows: 195 weeks for Victim 1; 20 weeks for Victim 2; 71 weeks for Victim 3; 5 weeks for Victim 4; 17 weeks for Victim 5; and 19 weeks for Victim 7.

Accordingly, the Court finds for each Victim that a reasonable approximation for the wages per day is $613.34 ($191.67 x 3.2), and the wages per week is $3,066.72 ($613.34 x 5). Thus, the full amount of the gross income to the Defendant or the value to the Defendant of the victim's services for each of the Victims is as follows: Victim 1 - $598,010.40 ($3,066.72 x 195); Victim 2 - $61,334.40 ($3,066.72 x 20); Victim 3 - $217,737.12 ($3,066.72 x 71); Victim 4 - $15,333.60 ($3,066.72 x 5); Victim 5 - $52,134.24 ($3,066.72 x 17); and Victim 7 - $58,267.68 ($3,066.72 x 19). In total, the reasonable approximation is

---

[2] It must be noted that during the April 11, 2023 hearing, the Court announced that the average amount of daily dates was 3. However, upon further review of Exhibit 37J-2, the Court is satisfied that average amount of dates per day is better approximated as 3.2.

$1,002,817.44. Having determined a reasonable approximation, the Court must now decide whether restitution should be awarded to all the Victims.

Under Sections 1593(b)(3) and 2429(a), when determining the value of the gross income or value to the Defendant from the Victims' services or labor, "[t]his [above] method has been used to calculate restitution in other sex trafficking cases, and . . . it is sufficiently reliable to provide a 'reasonable estimate.'" *Williams*, 5 F.4th at 1305. Thus, in consideration of mandatory restitution for Victims 1, 3, and 4, the Court need not contemplate the Victims actual losses, nor consider the Defendant's ability to pay. Therefore, restitution should be awarded to Victim 1 in the amount of $598,010.40; Victim 3 in the amount of $217,737.12; and Victim 4 in the amount of $15,333.60.

However, in consideration of discretionary restitution under Section 3663 for Victims 2, 5, and 7, the Court must calculate the Victims' actual losses, as well as consider the financial resources of the Defendant. Given that restitution for Victims 2, 5, and 7 must be based upon the loss *actually* caused by the Defendant's conduct, the method used above to derive the gross income or value to the Defendant from the Victims' services or labor has been flatly rejected by another court in determining restitution under Section 3663. *See United States v. Fu Sheng Kuo*, 620 F.3d 1158, 1165 (9th Cir. 2010) (holding that "[b]ecause the district court rejected the correct calculation method (under § 3663) in favor of an incorrect method (under § 1593), the district court erred"). In *Fu Sheng Kuo*, the court recognized the distinction between calculating actual losses under Section 3663, as compared to calculating a

defendant's ill-gotten gains under Section 1593, and expressly rejected a calculation for restitution solely based upon the average price per sex act multiplied by the average number of sex acts. *Id.* at 1164-65. Given that the very method proposed by the United States in this matter to calculate the discretionary restitution under Section 3663 has been previously rejected, this Court is disinclined to accept such a method in ordering discretionary restitution in this case. Further, as noted above, Section 3663 provides that the Court also consider the Defendant's ability to pay when determining whether to order discretionary restitution. Given that the Defendant was sentenced to 420 months imprisonment and has very little, if any, financial resources, it is highly unlikely the Defendant will pay any significant amounts of the mandatory restitution, which makes it even more unlikely he would ever be able to pay any discretionary restitution. Thus, given this record and without any proposed method to appropriately calculate actual losses for Victims 2, 5, and 7, discretionary restitution should not be awarded.

Accordingly, after due consideration and for the foregoing reasons, it is hereby **RECOMMENDED** that United States' Motion for Restitution ("Motion") (Doc. 147) be GRANTED IN PART AND DENIED IN PART, to the extent that only mandatory restitution be ordered for Victim 1 in the amount of $598,010.40; Victim 3 in the amount of $217,737.12; and Victim 4 in the amount of $15,333.60, for a total restitution amount of $831,081.12.

**IT IS SO REPORTED** in Tampa, Florida, this 18th day of May 2023.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Hon. Tom Barber
Counsel of Record

13